James J. Little (SBN 123373)
J.J. LITTLE & ASSOCIATES, P.C.
Fisherman's Village
13763 Fiji Way, Suite EU4
Marina Del Rey, California  90292
Tel:    (310) 622-9527
Fax:    (310) 477-9527

Attorney for Plaintiff DisputeSuite.com, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| DISPUTESUITE.COM, LLC, a Florida Limited Liability Company,<br><br>       Plaintiff,<br><br>       vs.<br><br>CREDIT UMBRELLA INC., a California corporation; ARTASHES DARBINYAN a.k.a. ART DARBIN, an individual; INFORMATION SERVICE SYSTEMS ART, LLC, a business based in Russia; and DOES 1 through 10, inclusive,<br><br>       Defendants. | CASE NO. 2:14-CV-06340<br><br>**COMPLAINT FOR:**<br><br>1.  **COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq*)**<br><br>2.  **BREACH OF CONTRACT**<br><br>3.  **FEDERAL UNFAIR COMPETITION—REVERSE PASSING OFF (15 U.S.C. § 1125(a))**<br><br>4.  **FEDERAL UNFAIR COMPETITION— MISAPPROPRIATION (15 U.S.C. § 1125(a))**<br><br>5.  **FEDERAL TRADE DRESS INFRINGEMENT (15 U.S.C. § 1125(a))**<br><br>6.  **FALSE ADVERTISING (15 U.S.C. § 1125(a))**<br><br>7.  **COMMON LAW MISAPPROPRIATION**<br><br>8.  **COMMON LAW TRADE DRESS INFRINGEMENT**<br><br>9.  **INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS**<br><br>10.  **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW (Bus. & Prof. Code § 17200 *et seq*)**<br><br>**DEMAND FOR JURY TRIAL** |

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

Plaintiff DisputeSuite.com, LLC (hereinafter, "DisputeSuite" or "Plaintiff") alleges as follows:

### NATURE OF THIS ACTION

1.     DisputeSuite files this action to combat Defendants Credit Umbrella Inc., Artashes Darbinyan, and Information Service Systems Art LLC's (collectively, "Defendants") unauthorized copying and display of DisputeSuite's copyrighted credit repair software and website, as well as other unfair, unlawful and/or fraudulent business practices engaged in by Defendants.

2.     DisputeSuite is a well-respected company that has created copyrighted computer software to solve many of the problems of credit repair companies (the "DisputeSuite Software").  DisputeSuite is the largest provider of technology and education services to the credit repair industry and has been a catalyst to the forward movement to standardize the industry.  DisputeSuite distributes its copyrighted materials in various ways, including through a copyrighted website that is periodically updated and modified.  The various versions of DisputeSuite's copyrighted website are referred to hereinafter collectively as the "DisputeSuite Website."  DisputeSuite has spent more than $1,500,000 and thousands of employee hours to create an efficient, user-friendly, and visually appealing website and software, which have attracted consumers and credit repair companies and caused DisputeSuite's business to flourish.

3.     DisputeSuite is informed and believes, and based thereon alleges, that without authorization, Defendants copied substantial portions of the DisputeSuite Software in credit repair software called TurboDispute (the "Infringing Software"), and copied substantial portions of the DisputeSuite Website in www.creditumbrella.com (the "Infringing Credit Umbrella Website") and www.turbodispute.com (the "Infringing TurboDispute Website") (collectively, the "Infringing Websites").

4.     As alleged in greater detail below, the Infringing Websites are

substantially similar to the DisputeSuite Website, with over 140 instances of verbatim or nearly-verbatim text and headings. The Infringing Websites also have a substantially similar layout, color scheme, and user interface as the DisputeSuite Website. Further, some graphics found on the Infringing Websites appear to have been saved or screenshot directly from the DisputeSuite Website and then placed on the Infringing Websites.

5. As also alleged in greater detail below, the Infringing Software has a substantially similar design, structure, text, graphical user interface, and "look and feel" to that of the DisputeSuite Software, among other similarities. These elements of the Infringing Software are so similar to those of the DisputeSuite Software that they could have only been created by reverse engineering, cloning, and/or substantial copying.

6. Defendants' unauthorized copying, reproduction, display, and distribution of the Infringing Software and Infringing Websites threaten to harm and have harmed DisputeSuite. Defendants have used and are continuing to use DisputeSuite's copyrighted works to advertise, promote, and sell their own products. The harm to DisputeSuite, which has invested hundreds of thousands of dollars and enormous creative energies to produce its copyrighted works, is irreparable. Accordingly, DisputeSuite brings this action for copyright infringement, breach of contract, unfair competition, misappropriation, reverse passing off, trade dress infringement, false advertising, and attendant state law and common law claims. DisputeSuite seeks temporary, preliminary and permanent injunctive relief, damages, costs, and attorneys' fees, as authorized by the Copyright Act of 1976, the Lanham Act, and California law.

## **JURISDICTION AND VENUE**

7. <u>Jurisdiction</u>. This action arises under the United States Copyright Act, 17 U.S.C. § 101 *et seq.,* and the Lanham Act, 15 U.S.C. § 1501 *et seq.* This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331,

COMPLAINT

1338(a) and 1338(b) and principles of supplemental jurisdiction. This Court has supplemental jurisdiction over the state law claims alleged in this action, pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because these claims are so intimately related to claims in the action exclusively within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution and because these claims arise out of the same nexus of facts and events.

8.   <u>Venue</u>.  Venue for this action properly lies in this District, pursuant to 28 U.S.C. §§ 1391(b) and (c) and § 1400(a), because Defendants reside or can be found in this District and a substantial part of the events giving rise to DisputeSuite's claims arose in this District.

9.   <u>Personal Jurisdiction</u>.  This Court has personal jurisdiction over Defendants, and each of them, because they reside in California, because they have their principal place of business in this judicial district, because they have sufficiently continuous, systematic, and routine contacts with California to establish such jurisdiction, or because the wrongful activity at issue concerns Defendants' operation of commercial businesses through which Defendants knowingly transact and solicit business in California, including within this judicial district.  Therefore, each of the Defendants has personally availed itself of the privilege of doing business in California and material elements of Defendants' wrongdoing occurred in California and caused injury to DisputeSuite in California.

## THE PARTIES

10.   DisputeSuite is a Florida limited liability company with its principal place of business located at 6619 S.R. 54, New Port Richey, Florida 34653. DisputeSuite does business in, and maintains substantial contacts with, this judicial district.

11.   DisputeSuite is informed and believes, and based thereon alleges, that Defendant Credit Umbrella Inc. is a corporation organized and existing under the laws of the State of California, with its principal place of business in the State of California.

COMPLAINT

DisputeSuite is further informed and believes, and based thereon alleges, that Credit Umbrella Inc. does business in, and maintains substantial contacts with, this judicial district.

12.   DisputeSuite is informed and believes, and based thereon alleges, that Defendant Artashes Darbinyan, a.k.a. Art Darbin, resides in Los Angeles County, California, is the registered agent for Credit Umbrella Inc., and is an officer and/or director of Credit Umbrella Inc.

13.   DisputeSuite is informed and believes, and based thereon alleges, that Defendant Information Service Systems Art LLC ("ISS Art") is a software development company with its principal place of business located in Russia, and an office at 2201 17th Street, San Francisco, California 94103.

14.   The true names and capacities, whether individual, corporate, associate, partnership or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 10, inclusive, are presently unknown to DisputeSuite, and DisputeSuite therefore sues these defendants by such fictitious names.  DisputeSuite is informed and believes and based thereon alleges that each of the Doe Defendants was and is either intentionally, negligently, or in some other manner, the cause or contributing cause of or otherwise responsible for the injuries and damages that have been, are being, and will be sustained by DisputeSuite as alleged herein.  DisputeSuite will amend this Complaint to allege the true names and capacities of the Doe Defendants, together with such allegations as may be appropriate, when the same have been ascertained.

15.   DisputeSuite is informed and believes, and based thereon alleges that, at all times mentioned herein, all of the Defendants named herein, including the Doe Defendants, were in some manner responsible for the acts herein alleged, and that each was the agent, partner, master, servant, employee, representative, director, parent, subsidiary, corporate affiliate, conspirator, co-conspirator, joint venturer or alter ego of each of the remaining Defendants herein and, further, was acting within

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

the course, scope and authority of such relationship, and with the knowledge, consent, approval or ratification of the remaining Defendants, and each of them.  DisputeSuite is informed and believes and based thereon alleges that Defendants, and each of them, performed, authorized, supervised, approved, permitted and/or ratified each of the wrongful acts and omissions alleged below, or did nothing subsequently to deny, disclaim or disaffirm said acts and/or omissions, and are thus liable, directly or indirectly, for the damage, loss and harm proximately caused to DisputeSuite by such wrongful acts or omissions as if each of said actions were their own.  (Hereinafter, the term "Defendants" as used in this Complaint shall refer to all of the Defendants, including the Doe Defendants, and each of them.)

## **RELEVANT FACTUAL ALLEGATIONS**

### **DisputeSuite's Business**

16.     DisputeSuite is universally recognized as the leading provider of technology training resources, marketing, and business solutions to companies in the credit repair industry.  As a result of its investment of more than one million dollars and five thousand man hours, DisputeSuite has created copyrighted computer software, which it markets to credit repair organizations ("CROs") to assist them in better serving their credit repair customers.  This technology, along with the broad collection of other products and services offered by DisputeSuite, is universally recognized in the credit repair industry as being the best available.[1]  In addition, since its inception in 2007, DisputeSuite has maintained an unwavering commitment to improving the reputation and public perception of the credit industry as a whole.

17.     DisputeSuite's software is used by more credit repair companies than any other software.  DisputeSuite first published and distributed the DisputeSuite Software in 2008 and has registered it with the United States Copyright Office.  DisputeSuite

---

[1] DisputeSuite first launched its credit repair software in 2008, and today it is used by more CROs than any other software in the world.  DisputeSuite also has clients spanning across four continents, in every state in the United States, Canada, Guam, and Puerto Rico.

COMPLAINT

has been issued Certificates of Registration for the DisputeSuite Software, Copyright Registration Nos. TX-7-174-575 and TX-7-304-164, on July 11, 2010 and August 9, 2010, respectively.  True and correct copies of these Certificates of Registration are attached hereto as Exhibit "1" and incorporated herein by this reference as if set forth here in full.

18.    A website is a specific location on the Internet and/or the World Wide Web identified by a unique address known as a Universal Resource Locator (a "URL").  Among the channels through which DisputeSuite distributes the DisputeSuite Software is through the DisputeSuite Website, which is found at the URL "www.DisputeSuite.com."

19.    DisputeSuite first published and distributed the unique layout of the copyrighted material that has remained fixated in its unique layout since it first entered the stream of commerce on or about February 1, 2008.  DisputeSuite has registered the DisputeSuite Website with the United States Copyright Office. DisputeSuite has been issued Certificates of Registration for the DisputeSuite Website, Copyright Registration Nos. VA-1-729-930 and VA-1-729-932, on July 11, 2010.  True and correct copies of these Certificates of Registration are attached hereto as Exhibit "2" and incorporated herein by this reference as if set forth here in full.

20.    DisputeSuite has invested, and continues to invest, substantial sums of money, time, effort, employee hours, and creative talent to create a DisputeSuite Website that is user-friendly and that attracts consumers and credit repair businesses to subscribe to the use of the DisputeSuite Software at a low monthly price. DisputeSuite continues to update the DisputeSuite Website in order to make certain that it remains user-friendly and attractive to consumers and credit repair businesses.

21.    DisputeSuite's efforts to create an attractive, user-friendly website have been remarkably successful.  The DisputeSuite Website currently has more than 22,000 hits per month.  (A "hit" occurs when someone visits a website.)  In addition, the DisputeSuite Website currently has more than 33,600 page views per month.

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

COMPLAINT

22.     DisputeSuite's effort to create a user-friendly credit repair software application has also been remarkably successful.  The DisputeSuite Software has more than 3000 user accounts and is the largest commercial software provider to the credit repair industry.

23.     DisputeSuite's user-friendly credit repair software assists with credit repair by providing the user with numerous templates of letters for users to customize and send out to companies and organizations to repair their credit.  Additional letter templates are provided to users and predetermined time intervals to further help users manage the timing and process of repairing their credit.

24.     As a result of DisputeSuite's efforts alleged above, Inc. Magazine in 2011 recognized DisputeSuite as one of the fastest growing companies in the United States and the 14th fastest growing software company in the United States.

25.      Also resulting from the foregoing, DisputeSuite is a well-respected and recognized leader in the credit industry.  Moreover, through its efforts, the DisputeSuite brand is an extremely valuable trademark, and the company as a whole enjoys substantial goodwill in the credit industry.

### DisputeSuite's Terms of Use

26.     DisputeSuite's Website contains a Terms of Use End-User Agreement ("EUA").  The Agreement is located at http://www.disputesuite.com/legal-tos.html and is navigable from DisputeSuite's main page.  A true and correct copy of the EUA is attached hereto as Exhibit "3".

27.     Upon purchase of use of the DisputeSuite Software, a user must review and accept and agree to be bound by the EUA in order to finalize purchase and use the DisputeSuite Software.

28.     Upon information and belief, DisputeSuite alleges that Defendants purchased access to DisputeSuite's software and used such access to unlawfully copy and recreate DisputeSuite's Software and Website.

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

29.     Significantly, as licensed end users of DisputeSuite's proprietary copyrighted software and other confidential, proprietary trade secret information, Defendants, would have had to expressly and explicitly agree to be bound by and subject to the terms of the EUA.   Significantly, those terms included an acknowledgement by Defendants that the information they were receiving access to was, in fact, confidential, proprietary trade secret information.

30.     Section 8 of the EUA, "License Grant & Restrictions" states:

You may not access the Service if you are a direct competitor of DisputeSuite.com, except with DisputeSuite.com's prior specific written consent. In addition, you may not access the Service for purposes of monitoring its availability, performance or functionality, or for any other benchmarking or competitive purposes. You shall not (i) license, sublicense, sell, resell, transfer, assign, distribute or otherwise commercially exploit or use for commercial advantage, or make available to any third party the Service or the Content in any way; (ii) modify or make derivative works based upon the Service or the Content; (iii) create Internet "links" to the Service or "frame" or "mirror" any Content on any other server or wireless or Internet-based device; or (iv) reverse engineer or access the Service in order to (a) build a competitive product or service, (b) build a product using similar ideas, features, functions or graphics of the Service, or (c) copy any ideas, features, functions or graphics of the Service. User licenses cannot be shared or used by more than one individual User. Individual User licenses may be reassigned from time to time to new Users who are replacing former Users who have terminated employment or otherwise changed job status or function and no longer use the Service.

31.     Section 8 of the EUA, "License Grant & Restrictions" further states:

Agreement not to compete, you hereby unconditionally agree not to compete with DisputeSuite companies, nor solicit, hire, engage, contract, joint venture, partner, or invest directly or indirectly with any employee, contractor or agent of DisputeSuite for any contract, employment, Joint Venture, Partnership etc., purpose during the usage of DisputeSuite products and or services and for a period of (5) Five years from the date that you cease usage of DisputeSuite products and or services. All intellectual property may be used solely for the users individual business and may not be shared, taught, distributed to any individual or business not directly employed by users company ex. Users CANNOT purchase, rent, use any of DisputeSuite products/services to train, teach, instruct others using on the content of the products without the expressed written consent of DisputeSuite. I hereby understand that DisputeSuite's content is copyright protected and any use outside the scope of this agreement is subject to a minimum of $25,000 per use fee.

32.     Section 9 of the EUA, "Intellectual Property Ownership" states:

DisputeSuite.com alone (and its licensors, where applicable) shall own all right, title and interest, including all related Intellectual Property Rights, in and to the DisputeSuite.com Technology, the Content and the Service and any suggestions, ideas, enhancement requests, feedback, recommendations or other information provided by you or any other party relating to the Service. This Agreement is not a sale and does not convey to you any rights of ownership in or related to the Service, the

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

DisputeSuite.com Technology or Content, or the Intellectual Property Rights owned by DisputeSuite.com. The DisputeSuite.com name, the DisputeSuite.com logo, artwork, end-user interface elements, the product names and features associated with the Service, the DisputeSuite.com Technology, and the Content and the Service are all the intellectual property or other property of DisputeSuite.com or third parties, and no right or license is granted to use them or any trade secrets or other proprietary, strategic, or confidential data of DisputeSuite.com except for the limited license to use described above. DisputeSuite.com claims no intellectual property rights over the Customer Data and other data you upload or provide to the Service. You agree that DisputeSuite.com may automatically track your use of the Service but will not use specific Customer Data for any purpose other than tracking use of the Service.

33.   Section 14 of the EUA, "Representations & Warranties" states: You represent and warrant that you have not falsely identified yourself nor provided any false information to gain access to the Service ….

### Defendants' Wrongful Conduct

**The Infringing TurboDispute Website**

34.   DisputeSuite is informed and believes, and based thereon alleges, that the Infringing TurboDispute Website appeared on the Internet sometime in 2013.

35.   The Infringing TurboDispute Website has a substantially similar, and nearly identical, design, structure, text, graphical user interface, and "look and feel" to that of the DisputeSuite Website, among other similarities.  These elements of the Infringing TurboDispute Website are so similar to those of the DisputeSuite Website

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

that they could have only been created by substantial copying.  Such examples include, but are not limited to, the following:

       a.     Headings and text on the home page of the Infringing TurboDispute Website are virtually identical to headings and text on the home page of the DisputeSuite Website, as shown in the chart below.

| DisputeSuite Website | Infringing TurboDispute Website |
|---|---|
| credit repair software with all the tools needed to start, run and manage a credit repair business. | Credit Repair Software with all the tools needed to start, run and manage a Credit Repair Business.! |
| Web-Based Delivery<br><br>DisputeSuite is powerful web-based credit repair software.  All you need is a web browser and internet. | Web-Based Delivery<br><br>TurboDispute is powerful web-based credit repair software.  All you need is a web browser and internet. |
| Dispute Letter Automation<br><br>Automate your dispute letter creation and generate dispute letters in minutes.  Point-and-click creation. | Dispute Letter Automation<br><br>Automate your dispute letter creation and generate dispute letters in minutes.  Point-and-click creation. |
| The online portal is a web-based hub for customers and affiliates to log in to and provides real-time updates. | The online portal is a web-based hub for customers and affiliates to log in to and provides real-time updates. |
| Credit Repair Training<br><br>identifying potential inaccuracies, duplications, merged files, unverifiable data, and outdated data | Credit Repair Business Training Videos<br><br>identifying potential inaccuracies, duplications, merged files, unverifiable data, and outdated data |
| Credit Repair Software<br><br>Automation and efficiency are the primary tasks of most software created.  Credit repair software allows the users to | Cloud Based Credit Repair Software<br><br>Dispute automation and efficient credit repair letters are the primary tasks of most credit repair software created.  Credit |

COMPLAINT

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

| | |
|---|---|
| track and manage credit repair.  Credit Education, Credit repair, Credit creation, and Credit rebuilding are difficult tasks to manage without automation.  All of the above Credit Building and Credit Repair activities were previously managed manually before the innovation of Credit Repair software providers like DisputeSuite.  Now that credit repair software is readily available at an affordable price, anyone looking to track, manage and automate the credit repair process can finally efficiently handles [sic] the process. | repair software allows the users to run a credit repair business from anywhere.  Credit dispute automation, credit repair, credit dispute letter creation, and Credit rebuilding are difficult tasks to manage without automation.  All of the above Credit Building and Credit Repair activities were previously managed manually before the innovation of Credit Repair software providers like TurboDispute.  Now that credit repair software is available at an affordable price, anyone looking to run, manage and automate the credit repair process can finally efficiently handles [sic] the process. |

b.     Headings and text on the "FAQ's" page of the Infringing TurboDispute Website are virtually identical to headings and text on the "FAQ" page of the DisputeSuite Website, as shown in the chart below.

| DisputeSuite Website | Infringing TurboDispute Website |
|---|---|
| Are you a credit repair company? NO! We are not a credit repair company, nor do we own, manage, or have any interest in any credit repair company. As a software company we feel that if we owned or had an interest in a credit repair company that would be a direct conflict with our clients. | Are you a credit repair company? NO! We are not a credit repair company, nor do we own, manage, or have any interest in any credit repair company. As a software company we feel that if we owned or had an interest in a credit repair company that would be a direct conflict with our clients. |

13

COMPLAINT

| | | |
|---|---|---|
| 1 | Will you market to my clients? | Will you market to my clients? |
| 2 | Absolutely NOT!! We are a software and | Absolutely NOT!! We are a software and |
| 3 | education provider, your data is safe and | education provider, your data is safe and |
| 4 | secure and is only accessed by you. | secure and is only accessed by you. |
| 5 | Can I control what my employees see? | Can I control what my employees see? |
| 6 | Absolutely! We have created the most | Absolutely! We have created the most |
| 7 | robust roles and permissions system | robust roles and permissions system |
| 8 | available in the industry. You can turn on, | available in the industry. You can turn on, |
| 9 | or turn off over 50 different features | or turn off over 50 different features |
| 10 | based on what you want the employee to | based on what you want the employee to |
| 11 | have access to. You're in control, YOU | have access to. You're in control, YOU |
| 12 | decide what permissions your employees | decide what permissions your employees |
| 13 | have. | have. |
| 14 | What type of security does DisputeSuite | What type of security does TurboDispute |
| 15 | have? | have? |
| 16 | We maintain the highest level of securtity | We maintain the highest level of security |
| 17 | [sic] that money can buy!  We use the | that money can buy! We use the same |
| 18 | same encryption and security technology | encryption and security technology that |
| 19 | that online banking and government | online banking and government websites |
| 20 | websites use. Additionally we have | use. Additionally we have redundancy |
| 21 | redundacy [sic] protection for backups of | protection for backups of your data- our |
| 22 | your data- our systems and data are all | systems and data are all housed in bio- |
| 23 | housed in bio-metric secure storage | metric secure storage facilities with 24 |
| 24 | facilities with 24 hour armed guards in 3 | hour armed guards in 3 different locations |
| 25 | different locations across the U.S. | across the U.S. |
| 26 | In case I decide to cancel what is the | In case I decide to cancel what is the |
| 27 | process? | process? |
| 28 | In order to protect your data and | In order to protect your data and |

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

14

COMPLAINT

| proprietary [sic] information we have a simple yet safe way for accounts to be cancelled (and we hope you don't) but all you'd have to do is call us, and we'll cancel your accout [sic] immediatley [sic] and give you an [sic] confirmation #. | proprietary information we have a simple yet safe way for accounts to be cancelled (and we hope you don't) but all you'd have to do is call us, and we'll cancel your account immediately and give you an [sic] confirmation number. |
|---|---|

        c.     Headings on the left-hand menu of the "Features" page of the Infringing TurboDispute Website are virtually identical to headings on the left-hand menu of the "Features" page of the DisputeSuite Website, as shown in the chart below.

| **DisputeSuite Website** | **Infringing TurboDispute Website** |
|---|---|
| Customer Management | Customer Management |
| Customer Portal | Customer Portal |
| Affiliate Management | Affiliate Management |
| Affiliate Portal | Affiliate Portal Login |
| Credit Reports | 3 in 1 Credit Reports |
| Dispute Automation | Dispute Automation |
| Dispute Management | Dispute Management |
| Letter Editor & Library | Letter Library & Editor |
| Administration | Admin Customization |
| Web-Based Delivery | Web-Based Delivery |
| Security | Security & Protection |
| Upcoming Features | Upcoming Features |

        d.     Headings and text on the "Customer Management" page of the Infringing TurboDispute Website are virtually identical to headings and text on the "Customer Management" page of the DisputeSuite Website, as shown in the chart below.

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

COMPLAINT

| DisputeSuite Website | Infringing TurboDispute Website |
|---|---|
| Complete view of your customers and leads | Complete view of your customers and leads |
| All your customers' information is in one place | All your customers' information is in one place |
| <u>Calendar & Appointment System</u> create, locate and manage their own schedule as well as their team members | <u>Calendar & Appointment System</u> create, locate, and manage their own schedules, alerts, and reminders as well as their team member's |
| Tasks System | Tasks System |
| More credit repair client management tools – Attachments, Notes, Central View, Activity History | More credit repair client management tools – Attachments, Notes, Central View, Activity History |

e.     Headings and text on the "Customer Portal" page of the Infringing TurboDispute Website are virtually identical to headings and text on the "Customer Portal" page of the DisputeSuite Website, as shown in the chart below.

| DisputeSuite Website | Infringing TurboDispute Website |
|---|---|
| Customers Can Check Status 24/7 Online | Customer Portal—Customers Can Check Status 24/7 Online |
| <u>Credit repair agreements signed electronically</u> The sales cycle in the credit repair industry has proven to be time consuming and consistently has high fallout percentages. With the added tool of electronic signatures to the customer portal, signing contracts and delivering | <u>Your Credit Repair Agreements Signed Electronically</u> TurboDispute knows how time consuming and unreliable the credit repair industry has proven to be and that is why we have added the electronic signature tool to the customer portal.  Signing contracts and delivering disclosures has |

16

COMPLAINT

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

| required disclosures becomes an effortless task. . . . [Y]our company administrator can easily copy and paste their existing contracts, CROA disclosure, power of attorney and any other necessary disclosures . . . | never been easier and more effortless. Company administrators can easily copy and paste existing contacts, CROA disclosures, power of attorneys and other necessary disclosures . . . |
|---|---|
| Engage your customers in the process | Enroll Your Customers In The Process |
| Advertise for your affiliates and referral partners | Advertise For Your Affiliate and Referral Partners |
| File attachments back and forth | File Attachments Back and Forth |
| More customer portal features | More customer portal features |
| Lower customer service costs | Lower customer service costs |
| Safe and Secure | Safe and Secure |
| Nothing to download or install | Nothing to download or install |
| Training Videos | Training Videos |
| Credit Education center | Credit Education Center |
| Alerts | Alerts |

      f.     Headings and text on the "Affiliate Management" page of the Infringing TurboDispute Website are virtually identical to headings and text on the "Affiliate Management" page of the DisputeSuite Website, as shown in the chart below.

| **DisputeSuite Website** | **Infringing TurboDispute Website** |
|---|---|
| Supercharge Your Sales with Affiliates | Supercharge Your Sales with Affiliates |
| More affiliate management tools | More affiliate management tools |
| <u>Attachments</u><br>Upload attachments under the contact such as 1099 stubs, agreements, photo ID and more | <u>Attachments</u><br>Upload attachments including 1099 stubs, agreements, photos IDs and more under each contact |

17
COMPLAINT

J.J. Little & Associates
A Professional Law Corporation

J.J. Little & Associates
A Professional Law Corporation

| Central View | Central View |
|---|---|
| Affiliate Access | Affiliate Access |
| Notes | Notes |
| 2-tier affiliate relationships | 2-tier affiliate relationships |
| Security | Security |

g.      Headings on the "Affiliate Portal Login" page of the Infringing TurboDispute Website are virtually identical to headings on the "Affiliate Portal" page of the DisputeSuite Website, as shown in the chart below.

| **DisputeSuite Website** | **Infringing TurboDispute Website** |
|---|---|
| Web Based Portal for Your Affiliates | Web Based Portal For Your Affiliates |
| Affiliates can login to get updates on customers | Affiliates Can Login To Get Updates On Customers |
| Affiliates can send leads | Affiliates Can Send Leads |
| Branded marketing for your Affiliates and Referral Partners | Branded Marketing for your Affiliates and Referral Partners |
| File attachments back and forth | File attachments back and forth |
| More features | More features |
| Make more money | Make more money |
| Safe and Secure | Safe and Secure |
| Nothing to download or install | Nothing to download or install |
| Alerts | Alerts |

h.      Headings and text on the "3 in 1 Credit Reports" page of the Infringing TurboDispute Website are virtually identical to headings and text on the "Credit Reports" page of the DisputeSuite Website, as shown in the chart below.

| **DisputeSuite Website** | **Infringing TurboDispute Website** |
|---|---|
| Manage and Track all your Customers' Credit Reports | Manage And Track All Your Customers' Credit Reports |

18

COMPLAINT

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

| | |
|---|---|
| Eliminate paperwork with our 3-in-1 credit report system. Maintain up-to-date credit reports for all of your customers. Input derogatory tradelines, collection accounts, public records and inquiries. Mark items as deleted, repaired or in dispute. Reports are color coded and easy to read. | Eliminate paperwork with our 3-in-1 color coded and easy to read credit report system. Maintain and manage your customer's credit reports, input derogatory trade lines, collection accounts, public records and inquiries, and even mark items as deleted, repaired or in dispute. |
| 3-in-1 credit report system | 3-in-1 Credit Report Dispute System |
| Generate dispute letters from the reports | Generate Dispute Letters From the Reports |
| <u>Dispute tracking and progress in the credit report</u><br>Within the customer's credit report, each credit report item is color-coded making it easy to identify which items have been repaired, deleted, or are still negative. That way you can easily identify what has been repaired and deleted and what still needs to be disputed. Under each credit report item there is a full dispute history. You can see an itemized list of when the item was disputed, who it was disputed with, and the results of the dispute, right in the credit report! You can even print preview every dispute letter used. | <u>Track Your Progress and Enter Dispute Results</u><br>Each credit report is now color coded, making it easy to identify which items have been repaired, deleted or are still negative. Within the credit report, users can also view the full dispute history as well as an itemized list of who disputed the item, when the item was disputed and the results of the dispute. TurboDispute also has a print preview option for every dispute letter used. |
| Statute of limitations (SOL) clock | Statue [sic] of limitations (SOL) clock |
| Eliminate scattered papers | Eliminate scattered papers |

19
COMPLAINT

| Real-time dashboard | Real-time dashboard |
| Safe and Secure | Safe and Secure |

       i.     Headings on the "Dispute Automation" page of the Infringing TurboDispute Website are virtually identical to headings on the "Dispute Automation" page of the DisputeSuite Website, as shown in the chart below.

| DisputeSuite Website | Infringing TurboDispute Website |
|---|---|
| Generate Dispute Letters Automatically in Seconds! | Generate Letters Automatically In Seconds! |
| Point and click letter creation | Point and Click Letter Creation |
| Dispute multiple items in one letter | Dispute Multiple Items In One Letter |
| Automatically print I.D. documents with letters | Automatically Print I.D. Documents With Dispute Letters |
| Create follow-up letters in seconds! | Create Follow-up Letters In Seconds! |
| Bulk letter printing | Bulk Dispute Letter Printing |
| Letters are saved under each customer | Letters are saved under each customer |
| Creditor and collection agency disputes | Creditor and collection agency disputes |

       j.     Headings on the "Dispute Management" page of the Infringing TurboDispute Website are virtually identical to headings on the "Dispute Management" page of the DisputeSuite Website, as shown below.

| DisputeSuite Website | Infringing TurboDispute Website |
|---|---|
| Easily Track and Manage Dispute Letters | Easily Track And Manage Dispute Letters |
| Track and record dispute results | Track and record dispute results |
| Dispute letter workflow | Dispute letter workflow |
| Credit dispute letter management | Credit dispute letter management |
| Create follow-up dispute letters in seconds! | Create follow-up dispute letters in seconds! |
| More features | More features |
| Stay On Top Of Dispute Letters | Stay on top of dispute letters |

COMPLAINT

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

| Ultra Fast Print Preview Feature | Ultra fast print preview feature |
|---|---|
| Real-Time Portal Updates | Real-Time Portal Updates |
| Credit Report Updates | Credit Report Updates |

k.     Headings on the "Letter Library & Editor" page of the Infringing TurboDispute Website are virtually identical to headings on the "Letter Editor & Library" page of the DisputeSuite Website, as shown in the chart below.

| **DisputeSuite Website** | **Infringing TurboDispute Website** |
|---|---|
| Customized Letter Editor and BONUS Letter Library | Customized Letter Editor And Bonus Letter Library |
| Letter template editor | Letter template editor |
| Personalize each letter, No sending canned templates! | Personalize each letter, No sending canned templates! |
| Store all your letters in a central library | Store all your letters in a central library |
| Organize your letters | Organize your letters |
| More features | More Features |
| Microsoft Word-like Spell Checking | Microsoft Word-like Spell Checking |
| Sharing Letters is Easy! | Sharing Letters is Easy! |
| Pasting from Word | Pasting from Word |
| Don't Fear Data Loss | Don't Fear Data Loss |

l.     Headings on the "Admin Customization" page of the Infringing TurboDispute Website are virtually identical to headings on the "Administration" page of the DisputeSuite Website, as shown below.

| **DisputeSuite Website** | **Infringing TurboDispute Website** |
|---|---|
| Easy to Customize | Administration-Easy to Customize |
| Customize drop-down menus and pick lists | Customize drop-down menus and pick lists |
| User roles/permissions | User roles/permissions |
| More credit repair client management | More credit repair client management |

| tools | tools |
| Global Attachments | Global Attachments |
| Upload photo | Upload photo |
| Add more users | Add more users |

m.     Headings and text on the "Web-Based Delivery" page of the Infringing TurboDispute Website are virtually identical to headings and text on the "Web-Based Delivery" page of the DisputeSuite Website, as shown in the chart below.

| **DisputeSuite Website** | **Infringing TurboDispute Website** |
|---|---|
| Online Software VS. Downloadable Software | Online Software Vs. Downloadable Software |
| Consider each of these items | Consider each of these items |
| Costs and expenses | Costs and expenses |
| Additional money savings | Additional money savings |
| Security | Security |
| Don't Fear Local Hard Drive failures | Don't Fear Local Hard Drive Failures |
| High Levels of User Adoption DisputeSuite is easy to use and intuitive. The service contains many tools and features recognizable to users of popular website's such as Amazon, eBay and Yahoo!  It has a more familiar interface than typical software.  In a recent usability study, DisputeSuite outranked our main competitor with a positive user rating of 95%.  Translation?  You and your staff spend less time trying to navigate the software and more time | High Levels of User Adoption TurboDispute is the leading credit repair software when it comes to ease and accessibility.  Our full time user interface designer has created TurboDispute to resemble popular sites like Amazon, eBay, and Yahoo so that users are familiar with the software.  In a recent study, TurboDispute outranked it's competitor with a 95% in usability.  So spend less time trying to translate your software and more time using it. |

COMPLAINT

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

| | |
|---|---|
| getting actual work done. | |
| Speed | Speed |
| Instant updates to our latest releases | Instant updates to our latest releases |
| Work from ANYWHERE | Work from anywhere |

n.    Headings on the "Security & Protection" page of the Infringing TurboDispute Website are virtually identical to headings on the "Security" page of the DisputeSuite Website, as shown in the chart below.

| DisputeSuite Website | Infringing TurboDispute Website |
|---|---|
| Enterprise, Financial-Grade Security at Every Level | Enterprise, Financial-Grade Security At Every Level |
| Role-Based Security | Role-Based Security |
| More Features | More Features |
| Data Segmenting | Data Segmenting |
| Data Encryption | Data Encryption |
| Data Protection and Backup | Data Protection and Backup |
| Firewall and Network Protection | Firewall and Network Protection |
| Server Security | Server Security |
| No Cookies | No Cookies |

36.    In addition to identical or virtually identical text and headings, many other portions of text on the Infringing TurboDispute Website are paraphrased from portions of text on the DisputeSuite Website.  DisputeSuite is informed and believes, and based thereon alleges, that Defendants created the text for the Infringing TurboDispute Website by copying the text from the DisputeSuite Website and then replacing portions of that text with text relevant to Defendants, in many instances changing only a few words.

37.    In addition to headings and text, the Infringing TurboDispute Website has a substantially similar, if not nearly identical, design, structure, graphical user

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

interface, and "look and feel" to that of the DisputeSuite Website, among other similarities.  For instance, the individual features pages of the Infringing TurboDispute Website are substantially similar to the individual features pages of the DisputeSuite Website, including a substantially similar design layout, placement of icons, headings, and text, and the features menu on the left-hand side of the Infringing TurboDispute Website is substantially similar to the features menu on the left-hand side of the DisputeSuite Website, including a substantially similar design layout, icon graphics and placement of icons, and text and placement of text.  These elements of the Infringing TurboDispute Website are so similar to those of the DisputeSuite Website that they could have only been created by copying.

38.   Accordingly, Defendants have infringed, and continue to infringe, DisputeSuite's copyrights in and to the DisputeSuite Website by creating, displaying, and operating the Infringing TurboDispute Website, which includes verbatim, unauthorized copies of copyrighted material from the DisputeSuite Website and/or is an infringing derivative work under the Copyright Act, 17 U.S.C. § 101 et seq.  In violation of DisputeSuite's copyrights, Defendants have been and are engaged in a pattern of misappropriating content and infringing copyrights by republishing copies of copyrighted material from the DisputeSuite Website, without the consent of DisputeSuite, the copyright owner.

**The Infringing Credit Umbrella Website**

39.   DisputeSuite is informed and believes, and based thereon alleges, that the infringing portions of the Infringing Credit Umbrella Website appeared on the Internet sometime in 2013.

40.   The Infringing Credit Umbrella Website has a substantially similar, if not nearly identical, design, structure, text, graphical user interface, and "look and feel" to that of the DisputeSuite Website, among other similarities.  These elements of the Infringing Credit Umbrella Website are so similar to those of the DisputeSuite

Website that they could have only been created by copying.  Such examples include, but are not limited to, the following:

   a.   Text on the home page of the Infringing Credit Umbrella Website is identical to text on the home page of the DisputeSuite Website, as shown in the chart below.

| DisputeSuite Website | Infringing Credit Umbrella Website |
|---|---|
| Dispute Letter Automation<br>Automate your dispute letter creation and generate dispute letters in minutes. | Dispute Letter Automation<br>Automate your dispute letter creation and generate dispute letters in minutes. |

   b.   Text advertising the "Features and Benefits" for TurboDispute software on the Infringing Credit Umbrella Website (http://www.creditumbrella.com/feature/turbodispute-start-creditrepair-business/) is virtually identical to text on the "Customer Portal" page of the DisputeSuite Website, as shown in the chart below.

| DisputeSuite Website | Infringing Credit Umbrella Website |
|---|---|
| Complete Private Label Solution<br>It's easy to add your own logo, information, and color scheme to the portal so that it looks like your web site when your customers log in. | Private Label Solution<br>Add your own logo, information, and color scheme to the credit repair portal so that it looks like your web site when your customers log in. |
| If you are tired of getting phone calls asking "What have you deleted again?" and "How many items are you working on?" then you will quickly realize the time saving value of the customer portal. The portal details your customer's status in several formats. | If you are tired of getting phone calls asking "What have you deleted?" and "How many items are you working on?" then you will quickly realize the time saving value of the credit repair portal. The portal details your customer's status in several formats. |

COMPLAINT

| | |
|---|---|
| . . . electronic signatures to the customer portal, signing contracts and delivering required disclosures becomes an effortless task. | Electronic signatures to the customer portal, signing contracts and delivering required disclosures becomes an effortless task. |
| . . . easily copy and paste their existing contracts, CROA disclosure, power of attorney and any other necessary disclosures into a section Your customers can easily sign the agreement through the portal. | Easily copy and paste their existing contracts, CROA disclosure, power of attorney and any other necessary disclosures into a section. Your customers can easily sign the agreement through the portal. |
| Getting documents to and from customers securely is a key feature of the portal. | Getting documents to and from customers securely is a key feature of the portal. |
| Customers can upload a copy of their credit report, dispute updates, and any other document that they see fit. No more mailing or faxing.  You can also upload attachments for individual customers. You may also set it up so all customers get a copy of the attachment, perfect for contract, brochures, CROA Disclosure, referral coupon, etc. | Customers can upload a copy of their credit report, dispute updates, and any other document that they see fit. No more mailing or faxing. You can also upload attachments for individual customers. You may also set it up so all customers get a copy of the attachment, perfect for contract, brochures, CROA Disclosure, referral coupon, etc. |
| Customers communicate with you through an interactive notes system. The notes system keeps track of all notes back and forth and notifies each party thorough e-mail when they have a note to read. | Customers communicate with you through an interactive notes system. The notes system keeps track of all notes back and forth and notifies each party thorough e-mail when they have a note to read. |

c.     Text advertising the "Features and Benefits" of TurboDispute software on the Infringing Credit Umbrella Website

COMPLAINT

(http://www.creditumbrella.com/feature/turbodispute-start-creditrepair-business/) is identical to text on the "Letter Editor & Library" page of the DisputeSuite Website, as shown on the chart below.

| DisputeSuite Website | Infringing Credit Umbrella Website |
|---|---|
| Access our library of proven dispute letters. Letters are perfect for disputing late payments, judgments, civil claims, charge-offs, foreclosures, liens, repossessions, bankruptcies, accounts in dispute, settlements accepted, collections and more. Use of all or some of these proven credit repair letter templates is unlimited. You can quickly move letters from the available templates to your private and company shared templates with ease. | Access our library of proven dispute letters. Letters are perfect for disputing late payments, judgments, civil claims, charge-offs, foreclosures, liens, repossessions, bankruptcies, accounts in dispute, settlements accepted, collections and more. Use of all or some of these proven credit repair letter templates is unlimited. You can quickly move letters from the available templates to your private and company shared templates with ease. |
| Sophisticated typography tools allow you to create your own credit repair letter templates | Sophisticated typography tools allow you to create your own credit repair letter templates |

      d.      Text advertising the "Features and Benefits" of TurboDispute software on the Infringing Credit Umbrella Website (http://www.creditumbrella.com/feature/turbodispute-start-creditrepair-business/) is identical to text on the "Customer Management" page of the DisputeSuite Website, as shown in the chart below.

| DisputeSuite Website | Infringing Credit Umbrella Website |
|---|---|
| software that gives your entire company a 360-degree view of each of your | software that gives your entire company a 360-degree view of each of your |

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

27

COMPLAINT

| customers | customers |
|---|---|
| to have a bird's eye view of a records progress without having to toggle through multiple customer records | to have a bird's eye view of a records progress without having to toggle through multiple customer records |

      e.    Text advertising the "Features and Benefits" of TurboDispute software on the Infringing Credit Umbrella Website (http://www.creditumbrella.com/feature/turbodispute-start-creditrepair-business/) is identical to text on the home page of the DisputeSuite Website, as shown on the chart below.

| **DisputeSuite Website** | **Infringing Credit Umbrella Website** |
|---|---|
| The online portal is a web-based hub for customers and affiliates to log in to and provides real-time updates. | The online portal is a web-based hub for customers and affiliates to log in to and provides real-time updates. |

      f.    Text advertising the "Features and Benefits" of TurboDispute software on the Infringing Credit Umbrella Website (http://www.creditumbrella.com/feature/turbodispute-start-creditrepair-business/) is identical to text on the "Credit Reports" page of the DisputeSuite Website, as shown on the chart below.

| **DisputeSuite Website** | **Infringing Credit Umbrella Website** |
|---|---|
| Eliminate paperwork with our 3-in-1 credit report system. | Eliminate paperwork with our 3-in-1 credit report system. |

      g.    Text advertising the "Features and Benefits" of TurboDispute software on the Infringing Credit Umbrella Website (http://www.creditumbrella.com/feature/turbodispute-start-creditrepair-business/) is identical to text on the "Affiliate Management" page of the DisputeSuite Website, as shown in the chart below.

COMPLAINT

| DisputeSuite Website | Infringing Credit Umbrella Website |
|---|---|
| <u>Affiliate management</u><br><br>Manage an unlimited number of affiliates and referral partners. The affiliate management system will allow you to track affiliates and referral partners for sending you business. | <u>Affiliate Management</u><br><br>Manage an unlimited number of affiliates and referral partners. The affiliate management system will allow you to track affiliates and referral partners for sending you business. |

> h.   Headings and text advertising the "Features and Benefits" of
> TurboDispute software on the Infringing Credit Umbrella Website
> (http://www.creditumbrella.com/feature/turbodispute-start-creditrepair-business/) are virtually identical to headings and text on the "Upcoming
> Features" page of the DisputeSuite Website, as shown in the chart below.

| DisputeSuite Website | Infringing Credit Umbrella Website |
|---|---|
| <u>Invoicing & Payment System</u><br><br>Efficiently billing you [sic] clients is an important page of any sales process. The invoicing system allows you to manage bills for your clients right in DisputeSuite. You can also process credit card payments, create invoices, and collect payments through the portal. | <u>Invoicing & Payment System</u><br><br>Efficiently billing you [sic] clients is an important page of any sales process. The invoicing system allows you to manage bills for your clients right in TurboDispute. You can also process credit card payments, create invoices, and collect payments through your pay pal account. |
| <u>Dispute Letter Mass Printing</u><br><br>The mass print function will allow you to print all your customers letters from one central location. The mass print will save lots of time by printing all customers | <u>Mass Print</u><br><br>The mass print function will allow you to print all your customers' letters from one central location. The mass print will save lots of time by printing all customers |

J.J. LITTLE & ASSOCIATES<br>A PROFESSIONAL LAW CORPORATION

COMPLAINT

| pending letters in one instance. | pending letters in one instance. |

      i.     Text advertising the "Features and Benefits" of TurboDispute software on the Infringing Credit Umbrella Website (http://www.creditumbrella.com/feature/turbodispute-start-creditrepair-business/) is virtually identical to text on the "Security" page of the DisputeSuite Website, as shown in the chart below.

| DisputeSuite Website | Infringing Credit Umbrella Website |
|---|---|
| Our extensive network of servers is protected in Ultra High Security environments. All entries to the secure server storage environments are biometrically protected. Building perimeters are protected with round the clock armed security personnel. | Our extensive network of servers is protected in Ultra High Security environments. All entries to the secure server storage environments are biometrically protected. Building perimeters are protected with round the clock security personnel. |

      j.     Text on the "Customer Reviews" page for TurboDispute software of the Infringing Credit Umbrella Website (http://www.creditumbrella.com/feature/turbodispute-start-creditrepair-business/) is virtually identical to text on the "Testimonials" page of the DisputeSuite Website, as shown in the chart below.

| DisputeSuite Website | Infringing Credit Umbrella Website |
|---|---|
| I truly felt like a well appreciated customer—which is hard to find these days. I just wanted to share my experience with DisputeSuite—it is by far the best product out there and I can make this statement with a firm conviction as I have done more than 3 months of | I truly felt like a well appreciated customer-which is hard to find these days. I just wanted to share my experience with TurboScore Business Edition – it is far the best product out there and I can make this statement with a firm conviction as I have done more than 3 months of |

COMPLAINT

| | |
|---|---|
| research… testing all the proclaimed best credit repair software on the market. They are not comparable in anyway. I have tested more than 35 different demos and Dispute Suite was able to capture the features needed for me or anyone who wishes to operate a successful credit repair business. I was shocked to see the low cost, because everyone else was charging an arm and a leg for less than similar features. | research… testing all the proclaimed best credit repair software on the market. they are not comparable in anyway. I have tested more than 15 different demos and TurboDispute was able to capture the features needed for me of anyone who wishes to operate a successful credit repair business. I was shocked to see the low cost, because everyone else was charging an arm and a leg for less than similar features. |
| This was a Godsend, after months of searching we found dispute suite and it has cut down on lost time and in turn increased productivity. We now have the ability to send clients monthly reports as to where their file is in the process. | This was a Godsend, after months of searching we found turbo dispute and it has cut down on lost time and in turn increased productivity. We now have the ability to send clients monthly reports as to where their file is in the process. |
| We pray that you guys continue to grow and we will be sending some of our business friends your way. Hey, if it makes a difference, this has everything a credit counselor or credit repair company needs, plus letters from the credit repair community. The value of this software- PRICELESS | We pray that you guys continue to grow and we will be sending some of our business friends your way. Hey, if it makes a difference, this has everything a credit counselor or credit repair company needs, plus letters from the credit repair community. The value of this software- PRICELESS |

41.     In addition to identical or virtually identical text and headings, many other portions of text on the Infringing Credit Umbrella Website are paraphrased from portions of text on the DisputeSuite Website.  DisputeSuite is informed and believes,

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

and based thereon alleges, that Defendants created the text for the Infringing Credit Umbrella Website by copying the text from the DisputeSuite Website and then replacing portions of that text with text relevant to Defendants, in many instances changing only a few words.

42.    In addition to headings and text, the Infringing Credit Umbrella Website has a substantially similar, if not identical, design, structure, graphical user interface, and "look and feel" to that of the DisputeSuite Website, among other similarities. These elements of the Infringing Credit Umbrella Website are so similar to those of the DisputeSuite Website that they could have only been created by substantial copying.  Examples include, but are not limited to, the following:

a.    The custom-created odometer graphic and heading "Dispute Letter Automation" on the home page of the Infringing Credit Umbrella Website is identical to the odometer graphic and heading "Dispute Letter Automation" on the home page of the DisputeSuite Website, as shown in the chart below.

| DisputeSuite Website | Infringing Credit Umbrella Website |
|---|---|
|  | |

b.    The pie chart graphic next to the heading "Credit Dispute Dashboard" on the home page of the Infringing Credit Umbrella Website is identical to the pie chart graphic next to the heading "Online Customer & Affiliate Access" on the home page of the DisputeSuite Website, as shown in the chart below.

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

| DisputeSuite Website | Infringing Credit Umbrella Website | |
|---|---|---|
|  | | |

c.      The lower portion of the Infringing Credit Umbrella Website uses a "Try it Now" green button and "As Seen On" list of website logos that are strikingly similar to the "Try it Now" green button and "As Seen On" list of website logos on the DisputeSuite Website, as shown in the chart below.

d.      The header of the Infringing Credit Umbrella Website uses a layout that is strikingly similar to the layout of the header of the DisputeSuite Website, including placement of the company name, logo, and navigation bar.

e.      The color scheme of the Infringing Credit Umbrella Website is almost identical to the color scheme of the DisputeSuite Website, including use of an almost identical shade of blue, in addition to black and white.

33

COMPLAINT

43.     Defendants have infringed, and continue to infringe, DisputeSuite's copyrights in and to the DisputeSuite Website by creating, displaying, and operating the Infringing Credit Umbrella Website, which includes verbatim, unauthorized copies of copyrighted material from the DisputeSuite Website and/or is an infringing derivative work under the Copyright Act, 17 U.S.C. § 101 et seq.  In violation of DisputeSuite's copyrights, Defendants have been and are engaged in a pattern of misappropriating content and infringing copyrights by republishing copies of copyrighted material from the DisputeSuite Website, without the consent of DisputeSuite, the copyright owner.

**The Infringing Software**

44.     Credit Umbrella sells the Infringing Software through the Infringing Websites.  DisputeSuite is informed and believes, and based thereon alleges, that Credit Umbrella began selling the Infringing Software on the Infringing Websites sometime in 2013.

45.     DisputeSuite is informed and believes, and based thereon alleges, that Defendant ISS Art developed the Infringing Software for Credit Umbrella.

46.     The Infringing Software has a substantially similar, if not nearly identical, design, structure, text, graphical user interface, and "look and feel" to that of the DisputeSuite Software, among other similarities.  These elements of the Infringing Software are so similar to those of the DisputeSuite Software that they could have only been created by reverse engineering, cloning, and/or substantial copying.  Such examples include, but are not limited to, the following:

a.     Letters: DisputeSuite invented a unique template system to manage and facilitate the automation of credit repair letters.  A template is a document that already contains certain content, such as text, styles, and formatting.  It may also include page layout, such as line spacing, and design elements, such as theme fonts and colors.  In this way, a template is an extremely useful starting point for a letter, and the more information already in place, the more quickly

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

COMPLAINT

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

the user can generate the letter.  Defendants cloned DisputeSuite's template letter system, including, but not limited to, the following elements:

      i.     <u>Add New Letter process</u>: The creation screen is where a user inputs and creates a new dispute letter.  Users can create, sort, and store their letter templates by choosing from Template Properties—the Template Category, Template Name, and Template Description— and DisputeSuite's Dispute Variables.  The Dispute Variables were a unique invention by DisputeSuite, allowing the user to merge a customer's personal and credit report information automatically into a dispute letter.  Defendants copied DisputeSuite's process of adding a new letter, the Template Properties, and the Dispute Variables, including both the variable names themselves, and the process for inserting variables into letters.

      ii.     <u>Template Library</u>: A template library is a place where users can store and update their letter templates, and view the list of all stored templates in a "grid list view."  Users can organize templates into logical groups under built-in categories, or their own custom categories.  For instance, a user can categorize all credit bureau-related templates into a category titled Credit Bureau Disputes.  Defendants copied the grid list view, the layout, and the verbiage of DisputeSuite's "Your Templates" screen.

      iii.    <u>Available Templates</u>:  One unique selling point of the DisputeSuite Software is that it comes with prewritten credit repair letters that users can download and use.  This includes a library of over 90 letters created and written by DisputeSuite.  Defendants copied this functionality and copied DisputeSuite's credit repair letters nearly verbatim.

iv.   Downloading a Letter:  DisputeSuite created a unique process for downloading a letter: the user would select a category to see all available templates offered, click the preview icon to view the template, and then click the download icon to download the letter.  The DisputeSuite Software prompts the user to enter and save letter properties, which they can customize if they wish.  The downloaded letter would then appear in the user's letter library.  Defendants copied this entire process.

v.   Template Categories:  DisputeSuite created a "template categories manager" to allow users to store templates in personalized categories in order to group them together.  For instance, a user could create a "Credit Bureau Disputes" category in which to store all the user's credit bureau dispute templates.  Defendants copied this concept.

b.   Credit Reports:  DisputeSuite spent hundreds of hours designing a credit report system for its credit repair software.  Through this process, DisputeSuite developed a 3-in-1, or tri-merge, credit report system to store a customer's negative credit history as reported by all three credit bureaus, which information is then used to create dispute letters.  Defendants copied this entire credit report system including, but not limited to, the following elements:

i.   Adding Credit Report Items:  DisputeSuite engaged in an extensive design and prototyping process to create a two-step process that allows a user to add credit report items into its software.  First, the user enters a preliminary set of information about a credit dispute item. Depending on the item entered, the DisputeSuite Software takes the user to a second input screen.  The item type selected in step one determines what input field will load on the second step.  This was a complex process developed over a time period of many months by DisputeSuite.

Defendants copied this entire process, including all eight items types in the second step.

     ii.    <u>Quick Add</u>:  DisputeSuite later came to believe that its two-step process for adding credit report items was too cumbersome, and introduced a new design that enabled users to more quickly add credit report items.  Defendants copied both the initial two-step process and the later-developed streamlined process.

     iii.    <u>View Credit Report</u>:  This function in the DisputeSuite Software allows users to see a customer's information, create dispute letters, and see each credit report that has been added to the system. Defendants copied this entire system, including copying each field and label verbatim, and the function allowing users to collapse and expand their view of the credit report items.

    c.    <u>Dispute Letter Generation</u>:  One of DisputeSuite's main innovations was developing a unique three-step process for how its software generates credit dispute letters.  The user first selects the credit report items it wants to include in its letter, then selects the letter template from the user's library, then can customize the letter.  The user never has to type in its customer's information into the letter; the "point-and-click" system allows the user to generate customized letters by selecting the items they want to dispute directly from the customer's credit reports.  Further, the customization step is revolutionary—rather than simply generating a form template, the DisputeSuite Software allows users to customize and tailor the letter before printing. Defendants copied this entire unique process from DisputeSuite:

     i.    <u>Step One (Selecting the Credit Report Items to Dispute)</u>: DisputeSuite created a screen page whereby the user can simply check a box to create a letter to one of the three credit bureaus, and can check multiple boxes in order to reference multiple items in one letter to any

COMPLAINT

particular credit bureau.  This is laid out in an easy-to-read grid.
Defendants copied this process and layout.

      ii.     <u>Step Two (Letter Template Selection):</u> This step allows the
user to select a dispute letter template.  This process is represented in a
simple "tab" format, with each tab representing a letter.  Defendants
copied this process and layout.

      iii.     <u>Step Three (Customizing the Letters Before Saving):</u>  Before
the DisputeSuite Software, dispute letter generators in credit repair
software were slow, and the ability to customize a letter was very
difficult or impossible.  DisputeSuite's innovative software allowed users
to quickly generate letters that they could also customize before saving
and printing.  Each customization could be saved for each letter under the
customer's record.  Further, the user could view the credit report items
next to the letter, like a mini credit report, allowing the user to easily add
more items from a credit report into the letter through a simple point-and-
click tool.  Defendants copied this step, including the mini credit report
next to the letter.

      iv.     <u>Work Flow:</u>  DisputeSuite engineered a unique workflow
system for creating, tracking, and managing dispute letters.  Once letters
are created, they are stored under the "pending print" file until printed.
Once printed, the letters are moved to the "active" section and remain
there until the results are entered.  Once results are entered for the letter,
the letter is moved to the "archived" section.  Defendants copied this
workflow process, including copying the screen pages showing the user's
pending print letters, active letters, results, and archived letters.

      d.     <u>Furnishers:</u>  Furnishers are DisputeSuite's database list of all
companies that report credit report data.  DisputeSuite invested months into
collecting thousands of relevant addresses.  Defendants copied DisputeSuite's

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

COMPLAINT

database of addresses, the website design that allows users to choose the applicable address or addresses, and the process by which a user can add a furnisher to the system.

e.    Reference Data:  The term "reference data" was created by DisputeSuite's software programmers to describe dynamic data throughout the software application.  Defendants copied all of DisputeSuite's reference data, including the term "reference data" itself.

47.    Defendants have infringed, and continue to infringe, DisputeSuite's copyrights in and to the DisputeSuite Software by creating and selling the Infringing Software, which includes verbatim, unauthorized copies of copyrighted material from the DisputeSuite Software and/or is an infringing derivative work under the Copyright Act, 17 U.S.C. § 101 *et seq.*  In violation of DisputeSuite's copyrights, Defendants have been and are engaged in a pattern of misappropriating content and infringing copyrights by republishing copies of copyrighted material from the DisputeSuite Software, without the consent of DisputeSuite, the copyright owner.

48.    By copying and reproducing copyrighted material from the DisputeSuite Website and DisputeSuite Software and displaying such material on the Infringing Websites and Infringing Software, Defendants are diverting consumers and customers that would otherwise purchase a license to use the DisputeSuite Website and/or DisputeSuite Software.  Such conduct damages DisputeSuite's user and subscription figures, which, in turn, has damaged and will continue to damage DisputeSuite's ability to attract other users, attract users and subscribers to attend DisputeSuite's "Boot Camp" training and expand its goodwill.

49.    Defendants continue to willfully infringe upon DisputeSuite's copyright in and to the DisputeSuite Website and DisputeSuite Software and continue to generate substantial income and profit from their exploitation of the copyrighted DisputeSuite Website and DisputeSuite Software created by DisputeSuite.

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

## Other Wrongful Conduct

50.    In addition, in an effort to induce potential customers to purchase their products, Defendants have engaged in unfair, unlawful, or fraudulent business practices and/or false advertising by, among other things, copying and displaying several identical "buzz" or catch phrases on the Infringing Websites that DisputeSuite has used prominently and continuously to advertise and market its credit repair software, well prior to Defendants, including on the DisputeSuite Website. These include, but are not limited to, the catch phrases "dispute letter automation" and "customer portal." Defendants in 2010 went so far as to apply for trademarks for the phrases "credit dispute manager," "dispute manager," and "credit report dashboard," which DisputeSuite invented in 2008.

51.    Defendants have further engaged in unfair, unlawful, or fraudulent business practices and/or false advertising by using the same identical catch phrases prominently and continuously used by DisputeSuite to advertise and market its copyrighted credit repair software as part of a conspicuous and transparent plan to confuse potential customers into thinking that the Infringing Software is actually the DisputeSuite Software or is associated in some way with DisputeSuite.

52.    Defendants' use of the identical catch phrases coined by DisputeSuite, as described above, has in fact created confusion in the market place as to the true source and creator of the software offered by Defendants.

53.    Defendants have further engaged in unfair, unlawful, or fraudulent business practices and/or false advertising by copying the "as seen on" footer from the DisputeSuite Website, which claims that Defendants' company and/or software were seen on certain television stations. DisputeSuite is informed and believes, and based thereon alleges, that at least as to the television station "Fox 13," Defendants' claim is literally false. Fox 13 is a local Tampa, Florida television station for which DisputeSuite's founder was a financial expert for many years.

54.     By engaging in the above conduct, Defendants have also deliberately and intentionally interfered with DisputeSuite's prospective economic relations with prospective customers of DisputeSuite.  As a direct and proximate result of Defendants' wrongful acts described herein, DisputeSuite has suffered losses resulting from Defendants' intentional diversion of prospective DisputeSuite customers to Defendants' software products.

### FIRST CLAIM FOR RELIEF

### (Copyright Infringement under 17 U.S.C. § 101 *et seq.* - Against All Defendants)

55.     DisputeSuite repeats and realleges, as if set forth here in full, each and every allegation contained in Paragraphs 1 through 54, inclusive, of this Complaint.

56.     DisputeSuite currently is, and has always been, the sole owner of all right, title and interest in and to the copyright in the DisputeSuite Website and DisputeSuite Software.  DisputeSuite has complied in all respects with the provisions of the Copyright Act of 1976, as amended, and all other laws governing copyright.  DisputeSuite has registered its copyright in the DisputeSuite Website and DisputeSuite Software with the United States Copyright Office.

57.     The DisputeSuite Website and DisputeSuite Software consists of material original with DisputeSuite and is copyrightable subject matter under the laws of the United States.

58.     At no time did DisputeSuite authorize Defendants, or any of them, jointly or severally, to copy, reproduce, republish, distribute, adapt, publicly display, create derivative works based on, and/or otherwise exploit all or any portion of the DisputeSuite Website or DisputeSuite Software.

59.     Defendants, and each of them, have copied, reproduced, republished, distributed, adapted, publicly displayed, created derivative works based thereon and/or otherwise exploited the DisputeSuite Website and DisputeSuite Software, or a portion

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

thereof, without the consent or authority of DisputeSuite, thereby directly infringing DisputeSuite's copyrights.

60.   Defendants' conduct constitutes infringement of DisputeSuite's copyright and exclusive rights under copyright in the DisputeSuite Website and DisputeSuite Software in violation of Sections 106 and 501, et seq. of the United States Copyright Act, 17 U.S.C. §§ 106 and 501.

61.   Defendants' acts of infringement have been willful, intentional, and purposeful, in reckless disregard of and with indifference to the rights of DisputeSuite.

62.   As a direct and proximate result of Defendants' infringements of DisputeSuite's copyright and exclusive rights under copyright in and to the DisputeSuite Website and DisputeSuite Software, and as a result of the matters alleged above, DisputeSuite is entitled to its actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

63.   Alternatively, DisputeSuite is entitled to statutory damages, pursuant to 17 U.S.C. § 504(c).

64.   Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause, great and irreparable harm to DisputeSuite that cannot be fully compensated in money.  DisputeSuite has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502 and 503, DisputeSuite is entitled to temporary, preliminary and permanent injunctive relief prohibiting Defendants, and each of them, their respective agents and employees, and all persons acting in concert or participation with any of them, from further infringing DisputeSuite's copyright.

65.   DisputeSuite is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

## **SECOND CLAIM FOR RELIEF**

### **(Breach of Contract - Against All Defendants)**

66.   DisputeSuite repeats and realleges, as if set forth here in full, each and every allegation contained in Paragraphs 1 through 65, inclusive, of this Complaint.

67.     On information and belief, DisputeSuite alleges that Defendants have visited the DisputeSuite Website and purchased access to the DisputeSuite Software and, in doing so, accepted and agreed to be bound by DisputeSuite's EUA.

68.     Defendants breached DisputeSuite's EUA by accessing the DisputeSuite Website and DisputeSuite Software as a direct competitor of DisputeSuite without DisputeSuite's prior specific written consent in violation of Section 8 of the EUA.

69.     Defendants breached the EUA by copying and misappropriating the DisputeSuite Website and DisputeSuite Software and creating the Infringing Websites and Infringing Software and selling, distributing, or otherwise commercially exploiting of using for commercial advantage the Infringing Websites and Infringing Software in violation of Section 8 of the EUA.

70.     Defendants breached the EUA by making derivative works (the Infringing Software and Infringing Websites) based on the DisputeSuite Website and DisputeSuite Software in violation of Section 8 of the EUA.

71.     Defendants breached the EUA by reverse engineering or accessing the DisputeSuite Website and DisputeSuite Software in order to (a) build a competitive product or service, (b) build a product using similar ideas, features, function or graphics of the DisputeSuite Website and DisputeSuite Software, and (c) copying ideas, features, and functions of the DisputeSuite Website and DisputeSuite Software in violation of Section 8 of the EUA.

72.     Defendants breached the EUA by infringing on DisputeSuite's intellectual property rights by creating and using in commerce the Infringing Websites and Infringing Software including end-user interface elements, the product names and features associated with the DisputeSuite Website and DisputeSuite Software, the DisputeSuite technology, and other intellectual property and proprietary, strategic, and confidential aspects of the DisputeSuite Website and DisputeSuite Software in violation of Section 9 of the EUA.

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

COMPLAINT

73.     Defendants breached the EUA by falsely identifying themselves by not identifying themselves as competitors of DisputeSuite using the DisputeSuite Software and DisputeSuite Website for illegal and infringing purposes in order to accept and agree to the terms of the EUA and access the DisputeSuite Website and DisputeSuite Software in violation of Section 14 of the EUA.

74.     As a result of Defendants' actions in breaching the EUA, DisputeSuite is entitled to legal and equitable relief in the form of injunctive relief and full disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Defendants as a result of such actions.

## THIRD CLAIM FOR RELIEF

### (Federal Unfair Competition—Reverse Passing Off under 15 U.S.C. § 1125(a) - Against All Defendants)

75.     DisputeSuite repeats and realleges, as if set forth here in full, each and every allegation contained in Paragraphs 1 through 74, inclusive, of this Complaint.

76.     DisputeSuite has a substantial interest in the DisputeSuite Website, not only as a copyrightable work, but also a channel for advertising, distributing, and selling ancillary goods and services related to the DisputeSuite Website, including the DisputeSuite Software.  DisputeSuite's interest in the DisputeSuite Website is sole and exclusive to the exclusion of all others claiming any creation or ownership interest in the work.

77.     DisputeSuite has a substantial interest in the DisputeSuite Software as a copyrightable work and revenue source.  DisputeSuite's interest in the DisputeSuite Software is sole and exclusive to the exclusion of all others claiming any creation or ownership interest in the work.

78.     Defendants, jointly and severally, have placed unauthorized versions or clones of the DisputeSuite Website and DisputeSuite Software into the stream of commerce, in the form of the Infringing Websites and Infringing Software, and have publicly taken credit for creating the Infringing Websites and Infringing Software.

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

COMPLAINT

79.     There is no significant difference between the expression set forth in the DisputeSuite Website and the expression set forth in the Infringing Websites.  There is no significant difference between the expression set forth in the DisputeSuite Software and the expression set forth in the Infringing Software.  On the contrary, Defendants' Infringing Websites and Infringing Software are bodily appropriations of DisputeSuite's Website and Software.

80.     Defendants are falsely representing that the Infringing Websites and Infringing Software are their own creations, not bodily appropriations of DisputeSuite's Software and Website.

81.     Defendants' false representation of their own creation and ownership in their clones of the DisputeSuite Software and DisputeSuite Website is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with DisputeSuite, or as to the origin, sponsorship, or approval of Defendants' website, services, and commercial activities by DisputeSuite.

82.     Alternatively, Defendants' false representation of their own creation and ownership in their clones of the DisputeSuite Software and DisputeSuite Website in commercial advertising and promotion, misrepresents the nature, characteristics, qualities, and origin of its goods, services, and commercial activities.

83.     As a result of the facts alleged herein, Defendants, and each of them, are engaged in reverse passing off and are misleading the public as to the origin of the Infringing Websites and Infringing Software and intentionally interfering with, undermining, and subverting DisputeSuite's ability to sell goods and services, including the DisputeSuite Software, through the DisputeSuite Website.  In doing so, Defendants, jointly and severally, have made and will continue to make false and misleading designations about the origins of the Infringing Websites and Infringing Software, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

84.    In doing the wrongful acts and omissions alleged herein, Defendants have caused and will continue to cause confusion among consumers by falsely crediting the creation, origination, and authorship of the Infringing Websites and Infringing Software to those other than DisputeSuite.

85.    The conduct of Defendants, and each of them, has been and is intentional, knowing, willful and deliberate.

86.    As a direct and proximate result of Defendants' violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and as a result of the facts alleged herein, DisputeSuite has suffered and will continue to suffer damages in an amount not yet ascertained, in addition to other and as yet unascertainable damages. DisputeSuite is entitled to recover all damages sustained as a result of the unlawful conduct of Defendants, and each of them, including Defendants' profits, DisputeSuite's damages, treble those amounts, costs of suit, and reasonable attorneys' fees under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a).

87.    The wrongful conduct of Defendants is causing, and unless enjoined and restrained by this Court, will continue to cause, great and irreparable harm to DisputeSuite that cannot be fully compensated in money.  DisputeSuite has no adequate remedy at law.  DisputeSuite is entitled to temporary, preliminary, and permanent injunctive relief prohibiting Defendants, and each of them, their respective agents and employees, and all persons acting in concert or participation with any of them, from further violations of the Lanham Act.

## **FOURTH CLAIM FOR RELIEF**

### **(Federal Unfair Competition—Misappropriation under 15 U.S.C. § 1125(a) Against All Defendants)**

88.    DisputeSuite repeats and realleges, as if set forth here in full, each and every allegation contained in Paragraphs 1 through 87, inclusive, of this Complaint.

89.    DisputeSuite has a substantial interest in the DisputeSuite Website, not only as a copyrightable work, but also a channel for advertising, distributing, and

selling ancillary goods and services related to the DisputeSuite Website, including the DisputeSuite Software.  DisputeSuite's interest in the DisputeSuite Website is sole and exclusive to the exclusion of all others claiming any creation or ownership interest in the work.

90.    DisputeSuite has a substantial interest in the DisputeSuite Software as a copyrightable work and revenue source.  DisputeSuite's interest in the DisputeSuite Software is sole and exclusive to the exclusion of all others claiming any creation or ownership interest in the work.

91.    DisputeSuite has made a substantial investment of time, effort, and money in creating the DisputeSuite Website and DisputeSuite Software.

92.    Defendants, and each of them, have misappropriated the intellectual property associated with the DisputeSuite Website and the structure, concept, and format of the DisputeSuite Website for themselves in the Infringing Websites, with no credit or compensation to DisputeSuite.

93.    Defendants, and each of them, have misappropriated the intellectual property associated with the DisputeSuite Software and the structure, concept, and format of the DisputeSuite Software for themselves in the Infringing Software, with no credit or compensation to DisputeSuite.

94.    As a result of the facts alleged herein, Defendants have made and will continue to make false and misleading designations about the origins of the Infringing Websites and Infringing Software in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).  In doing the wrongful acts and omissions alleged herein, Defendants have caused and will continue to cause confusion among consumers.

95.    The conduct of Defendants, and each of them, has been and is willful and deliberate.

96.    As a direct and proximate result of Defendants' violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and as a result of the facts alleged

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

herein, DisputeSuite has suffered and will continue to suffer damages in an amount not yet ascertained, in addition to other and as yet unascertainable damages. DisputeSuite is entitled to recover all damages sustained as a result of the unlawful conduct of Defendants, and each of them, including Defendants' profits, DisputeSuite's damages, treble those amounts, costs of suit, and reasonable attorneys' fees under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a).

97.     The wrongful conduct of Defendants is causing, and unless enjoined and restrained by this Court, will continue to cause, great and irreparable harm to DisputeSuite that cannot be fully compensated in money. DisputeSuite has no adequate remedy at law. DisputeSuite is entitled to temporary, preliminary, and permanent injunctive relief prohibiting Defendants, and each of them, their respective agents and employees, and all persons acting in concert or participation with any of them, from further violations of the Lanham Act.

## FIFTH CLAIM FOR RELIEF

### (Federal Trade Dress Infringement under 15 U.S.C. § 1125(a) - Against All Defendants)

98.     DisputeSuite repeats and realleges, as if set forth here in full, each and every allegation contained in Paragraphs 1 through 98, inclusive, of this Complaint.

99.     As alleged above, DisputeSuite has created, and is the owner of, the DisputeSuite Website and DisputeSuite Software including the total image and overall appearance of the DisputeSuite Website and DisputeSuite Software (the "DisputeSuite Trade Dress"). The DisputeSuite Trade Dress has been continuously used in commerce by DisputeSuite and is widely known throughout the United States.

100.   DisputeSuite has spent in excess of $1,500,000 creating, promoting, and advertising the DisputeSuite Trade Dress and products and services marketed and sold in connection with the DisputeSuite Trade Dress, including the DisputeSuite

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

48

COMPLAINT

Software, and has marketed and sold in excess of $8,000,000 in products and services through the DisputeSuite Trade Dress.

101. As a direct result of DisputeSuite's conduct as alleged above, DisputeSuite now owns valuable goodwill symbolized by the DisputeSuite Trade Dress.

102. The DisputeSuite Trade Dress is nonfunctional. The DisputeSuite Trade Dress is not necessary to the operation and function of the DisputeSuite Software or the DisputeSuite Website, but instead identifies the DisputeSuite Software and DisputeSuite Website as being created, owned, and operated by DisputeSuite.

103. As a direct result of the care and skill exercised by DisputeSuite, the nature and quality of the goods and services sold through and in connection with the DisputeSuite Trade Dress, and the extensive promotion, advertising, sale, and public acceptance thereof, the DisputeSuite Trade Dress has developed a secondary meaning and has become known as a symbol of the goodwill that DisputeSuite has created throughout the United States and elsewhere by selling products and services of high quality and by fairly and honestly dealing with the trade and the public in the sale of these goods and services.

104. As a direct result of DisputeSuite's conduct as alleged above, the DisputeSuite Trade Dress and the goods, services, and businesses associated with the DisputeSuite Trade Dress have acquired a reputation for excellence, particularly in the area of credit repair software and services. As a result of DisputeSuite's conduct as alleged above, and as a direct result of DisputeSuite having acquired a reputation for excellence as alleged above, the DisputeSuite Trade Dress has come to be identified and associated with DisputeSuite in the minds of the public and consumers and has acquired a secondary meaning. The DisputeSuite Trade Dress is nonfunctional, highly distinctive, and is entitled to the broadest scope of protection.

105. The conduct of Defendants, and each of them, as alleged above, including reproducing and using the DisputeSuite Trade Dress in connection with the

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

sale, offering for sale, and advertising of goods and services on the Infringing Websites, for the purpose or with the effect of directing consumers who are searching for DisputeSuite products and services to the Infringing Website, and with the sale of the Infringing Software, constitutes trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a).  In doing the wrongful acts and omissions alleged herein, Defendants have caused and will continue to cause confusion among consumers.

106.   The conduct of Defendants, and each of them, has been and is knowing, intentional, willful, and deliberate.

107.   As a direct and proximate result of Defendants' violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), and as a result of the facts alleged herein, DisputeSuite has suffered and will continue to suffer damages in an amount not yet ascertained, in addition to other and as yet unascertainable damages. DisputeSuite is entitled to recover all damages sustained as a result of the unlawful conduct of Defendants, and each of them, including Defendants' profits, DisputeSuite's damages, treble those amounts, costs of suit, and reasonable attorneys' fees under Section 35 of the Lanham Act, 15 U.S.C. § 1117(a).

108.   The wrongful conduct of Defendants is causing, and unless enjoined and restrained by this Court, will continue to cause, great and irreparable harm to DisputeSuite that cannot be fully compensated in money.  DisputeSuite has no adequate remedy at law.  DisputeSuite is entitled to temporary, preliminary, and permanent injunctive relief prohibiting Defendants, and each of them, their respective agents and employees, and all persons acting in concert or participation with any of them, from further violations of the Lanham Act.

## SIXTH CLAIM FOR RELIEF

### (False Advertising under 15 U.S.C. § 1125(a) - Against All Defendants)

109.   DisputeSuite repeats and realleges, as if set forth here in full, each and every allegation contained in Paragraphs 1 through 109, inclusive, of this Complaint.

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

110.   Defendants have, in connection with goods or services, used a false or misleading description of fact, or a false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of its goods, services, or commercial activities. Specifically, in copying the portion of the DisputeSuite Website advertising that DisputeSuite's goods and services have been "seen on" certain television stations, Defendants have engaged in false advertising in claiming such statements are true as to Defendants' goods and services.  In particular, Defendants' goods and services have never been "seen on" Fox 13, a Tampa, Florida affiliate which featured DisputeSuite's founder as a financial expert for many years.

111.   Defendants' statements have actually deceived or have the tendency to deceive a substantial portion of its intended audience.

112.   Defendants' deception is material and is likely to influence the purchasing decisions of credit repair software customers.

113.   Defendants' false and misleading statements and representations were and are made in interstate commerce.

114.   Defendants' wrongful conduct is and was intentional, knowing and willful.

115.   As a result of Defendants' improper activities, DisputeSuite has suffered and continues to suffer substantial injury, including irreparable injury and damages, unless Defendants are preliminarily and/or permanently enjoined.

## SEVENTH CLAIM FOR RELIEF

### (Common Law Misappropriation - Against All Defendants)

116.   DisputeSuite repeats and realleges, as if set forth here in full, each and every allegation contained in Paragraphs 1 through 116, inclusive, of this Complaint.

117.   DisputeSuite has invested, and continues to invest, substantial sums of money, time, effort, employee hours, and creative talent to create and maintain the DisputeSuite Website and the DisputeSuite Software and ensure that they are user-

friendly and continue to attract consumers and credit repair businesses to subscribe to the use of the DisputeSuite Software at a low monthly price.  DisputeSuite continues to update the DisputeSuite Website in order to make certain that it remains user-friendly and attractive to consumers and credit repair businesses.

118.   Defendants have copied and appropriated the DisputeSuite Website and DisputeSuite Software at little or no cost to Defendants.

119.   Upon information and belief, Defendants have engaged in such conduct willfully, deliberately, and in conscious disregard of DisputeSuite's rights.

120.   Defendants' said knowing and willful copying and misappropriation has injured, and continues to injure DisputeSuite and DisputeSuite is entitled to the remedies provided for it under common law.

### EIGHTH CLAIM FOR RELIEF

### (California Common Law Trade Dress Infringement - Against All Defendants)

121.   DisputeSuite repeats and realleges, as if set forth here in full, each and every allegation contained in Paragraphs 1 through 121, inclusive, of this Complaint.

122.   The general consuming public in the area of credit and credit repair, as well as CROs, and others in the credit and credit repair industry of California, as well as nationally and internationally, widely recognize the trade dress configuration of the DisputeSuite Website and the DisputeSuite Software as designating DisputeSuite as the source of services and/or goods.  DisputeSuite has common law trade dress rights in the DisputeSuite Website and the DisputeSuite Software trade dress configuration under California law.

123.   As alleged above, DisputeSuite has created, and is the owner of, the DisputeSuite Website and DisputeSuite Software including the total image and overall appearance of the DisputeSuite Website and DisputeSuite Software (the "DisputeSuite Trade Dress").  The DisputeSuite Trade Dress has been continuously

used in commerce by DisputeSuite and is widely known throughout the United States.

124.   DisputeSuite has spent in excess of $1,500,000 creating, promoting, and advertising the DisputeSuite Trade Dress and products and services marketed and sold in connection with the DisputeSuite Trade Dress, including the DisputeSuite Software, and has marketed and sold in excess of $8,000,000 in products and services through the DisputeSuite Trade Dress.

125.   As a direct result of DisputeSuite's conduct as alleged above, DisputeSuite now owns valuable goodwill symbolized by the DisputeSuite Trade Dress.

126.   As a direct result of DisputeSuite's conduct as alleged above, the DisputeSuite Trade Dress and the goods, services, and businesses associated with the DisputeSuite Trade Dress have acquired a reputation for excellence, particularly in the area of credit repair software and services.  As a result of DisputeSuite's conduct as alleged above, and as a direct result of DisputeSuite having acquired a reputation for excellence as alleged above, the DisputeSuite Trade Dress has come to be identified and associated with DisputeSuite in the minds of the public and consumers and has acquired a secondary meaning.  The DisputeSuite Trade Dress is nonfunctional, highly distinctive, and is entitled to the broadest scope of protection.

127.   Defendants have knowingly and willfully used in over the internet, including in California and to California consumers and CROs, a counterfeit website and counterfeit software that are identical to, or substantially indistinguishable from, the DisputeSuite Website and the DisputeSuite Software trade dress configuration in connection with the sale, offering for sale, distribution, and advertising of goods and/or services.

128.   Defendants' said use is likely to cause confusion, mistake, or deception as to the source origin, sponsorship, or approval of its products, in that purchasers or others are likely to believe the Infringing Websites and Infringing Software are the

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

DisputeSuite Website and DisputeSuite Software or the website and software of a company legitimately connected with, approved by, or related to DisputeSuite.

129.  Defendants' said knowing and willful use has imitated, counterfeited, and infringed DisputeSuite's Trade Dress configuration in commerce in violation of California common law.

130.  Upon information and belief, Defendants have engaged in such conduct willfully, deliberately, and in conscious disregard of DisputeSuite's rights.

131.  By reason of the foregoing, DisputeSuite has been injured and is entitled to the remedies provided for it under the common law.

132.  Defendants' conduct described herein has caused, and if not enjoined will continue to cause, irreparable damage to DisputeSuite's rights in its trade dress and to the business, positive reputation, and goodwill of DisputeSuite, which cannot be adequately compensated solely by monetary damages.  DisputeSuite therefore has no adequate remedy at law and seeks preliminary and permanent injunctive relief.

## NINTH CLAIM FOR RELIEF

### (Interference With Prospective Economic Relations - Against All Defendants)

133.  DisputeSuite repeats and realleges, as if set forth here in full, each and every allegation contained in Paragraphs 1 through 132, inclusive, of this Complaint.

134.  DisputeSuite's business success is predicated in part upon building and maintaining relationships with prospective customers interested in establishing their own credit repair business by licensing the DisputeSuite Software, including, without limitation, bankers, mortgage brokers, real estate agents, and other business opportunity seekers.  DisputeSuite enjoys a prospective economic advantage and prospective business relationships with these prospective customers.  Defendants are aware of, and have knowledge of, DisputeSuite's prospective economic advantage and prospective business relationship with these prospective customers.

COMPLAINT

135.   DisputeSuite is informed and believes, and based thereon alleges, that Defendants have interfered with DisputeSuite's prospective economic advantage and prospective business relations using wrongful means and for improper purposes, as described herein, including, without limitation, by creating and displaying the Infringing Websites and offering the Infringing Software and other credit repair software for sale and/or license on the Infringing Websites.

136.   It was reasonably foreseeable that Defendants' wrongful conduct would interfere with and/or disrupt DisputeSuite's prospective economic relationships with its prospective customers.

137.   Defendants have engaged in the acts described herein with the deliberate intention of disrupting DisputeSuite's prospective economic relationships with its prospective customers, and with the design and intent of diverting those client relationships to themselves.  Defendants knew that interference was certain or substantially certain to occur as a result of their actions, and Defendants acted with the intent to disrupt DisputeSuite's prospective economic advantage and prospective business relations.

138.   Defendants' wrongful conduct did, and continues to interfere with DisputeSuite's prospective economic relationships with its prospective customers.

139.   As a direct and proximate result of Defendants' interference with prospective business relations, and as a result of the facts alleged herein, DisputeSuite has suffered and will continue to suffer damages in an amount not yet ascertained, but believed to be in excess of $1,000,000, in addition to other and as yet unascertainable damages.  DisputeSuite will seek leave of this Court to amend this Complaint when the amount of its damages has been precisely ascertained.

140.   In doing the acts alleged herein, Defendants, and each of them, acted with oppression, fraud, malice, and with the intent to injure DisputeSuite and to deprive DisputeSuite of property or legal rights or otherwise cause injury. Defendants' conduct was despicable, and subjected DisputeSuite to cruel and unjust

hardship in conscious disregard of DisputeSuite's rights.  Therefore, DisputeSuite is entitled to recover punitive damages from Defendants, and each of them, in an amount to be proven at trial.

### TENTH CLAIM FOR RELIEF

### (Violation of California Unfair Competition Law - Bus. & Prof. Code § 17200 *et seq.* -Against All Defendants)

141.   DisputeSuite repeats and realleges, as if set forth here in full, each and every allegation contained in Paragraphs 1 through 137, inclusive, of this Complaint.

142.   The acts and practices of Defendants, and each of them, as alleged herein, constitute unfair, unlawful, and fraudulent business acts and practices within the meaning of Sections 17200 *et seq*. of the California Business and Professions Code.

143.   Defendants have engaged in unfair business acts and practices in that the harm caused by their fraudulent conduct outweighs and utility of such conduct and such conduct offends public policy, is immoral, unscrupulous, unethical, deceitful and offensive, and causes substantial injury to DisputeSuite.

144.   All of the above acts and practices have caused, and are causing, injury to DisputeSuite's business.  DisputeSuite has suffered injury in fact and has lost money and property as a result of such unfair competition.

145.   DisputeSuite seeks and injunction prohibiting Defendants, and each of them, from further engaging in such unfair business acts and practices.  DisputeSuite further seeks an order of restitution and/or disgorgement from Defendants.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff DisputeSuite.com, LLC prays for judgment against Defendants, and each of them, jointly and severally, as follows:

1.    For damages pursuant to 17 U.S.C. § 504 resulting from Defendants' infringement of the DisputeSuite Website and DisputeSuite Software and all profits of Defendants derived from their infringement of the DisputeSuite Website and DisputeSuite Software;

COMPLAINT

2.     That Defendants and their respective officers, agents, servants, employees, representatives, successors, and assigns, and all persons acting in concert or participation with them, be temporarily, preliminarily, and permanently enjoined from:

     a.     copying, reproducing, distributing, adapting, advertising, and/or publicly displaying works that are substantially similar to DisputeSuite's copyrighted DisputeSuite Website or DisputeSuite Software and/or works that violate DisputeSuite's copyrights in and to the DisputeSuite Website or DisputeSuite Software including, without limitation, the Infringing Credit Umbrella Website, the Infringing TurboDispute Website, and the Infringing Software;

     b.     using, authorizing the use of, copying, reproducing, or imitating the DisputeSuite Website, the DisputeSuite Software and/or the DisputeSuite Trade Dress, or any confusingly similar or colorable imitation thereof;

     c.     competing unfairly with DisputeSuite by passing off or misappropriating the intellectual property contained in the DisputeSuite Website or DisputeSuite Software; and

     d.     inducing, causing, materially contributing to, and profiting from the foregoing acts committed by others.

3.     That Defendants, and each of them, be ordered to impound and reasonably dispose of all copies of Defendants' works that infringe the copyrights of DisputeSuite in and to the DisputeSuite Website and DisputeSuite Software and/or compete unfairly with the intellectual property of DisputeSuite that are in Defendants' possession, custody or control, in whatever medium, including all electronic media, computers, digital devices, and other items, electronic or otherwise;

4.     For an order of restitution and/or disgorgement in the amount of the benefit to Defendants by reason of their unlawful conduct, in an amount to be proven at trial;

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION

5. For DisputeSuite's damages, in an amount to be proven at trial, but not less than $1,000,000;

6. For treble damages under 15 U.S.C. § 1117 due to Defendants' knowing and intentional conduct.

7. For a full accounting of all profits, income, receipts, or other benefits derived by Defendants as a result of their unlawful conduct;

8. For statutory damages under the Copyright Act, in an amount to be proven at trial;

9. For the imposition of a constructive trust;

10. For punitive damages, in an amount to be proven at trial;

11. For DisputeSuite's reasonable attorneys' fees and costs; and

12. For such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff DisputeSuite.com, LLC hereby demands a jury trial on its Complaint pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED:  August 12, 2014                    J.J. LITTLE & ASSOCIATES, P.C.

By:   _____

James J. Little
Attorney for Plaintiff DisputeSuite.com, LLC.

COMPLAINT

J.J. LITTLE & ASSOCIATES
A PROFESSIONAL LAW CORPORATION